## STATE EX REL. JAMES P. LUDWIG AND ANOTHER v. CITY OF BEMIDJI.

212 N. W. 2d 876.

November 23, 1973—No. 44079.

*Kief & Duranske* and *George L. Duranske III*, for appellant.
*Smith, McRae & Hilligan* and *Tom Hilligan*, for respondent.

OTIS, JUSTICE.

These proceedings have been brought by a resident of Beltrami County to enjoin the city of Bemidji under the provisions of the Minnesota Environmental Rights Act, Minn. St. c. 116B, from polluting the Mississippi River and to recover damages arising from a nuisance maintained by the city. Section 116B.03, subd. 1, provides, in part, that "no action shall be allowable under this section for conduct taken by a person pursuant to any * * * permit issued by the pollution control agency * * *." The issue is whether the city's permit to discharge effluent into the river was validly revoked by the Pollution Control Agency (PCA). The trial court held that the city did not have adequate notice of the PCA's intention to revoke the permit and accordingly dismissed the injunction suit. Plaintiff appeals from that judgment. We affirm. The nuisance action is still pending.

On July 9, 1959, the Water Pollution Control Commission of Minnesota granted the city a permit under which it was allowed to operate its waste disposal facilities by discharging into the river sewage which had been subjected to secondary treatment. Subsequently, by L. 1967, c. 882, the Minnesota Pollution Control Agency was created as a successor agency to the Water Pollution Control Commission. In 1969, the PCA adopted Regulation WPC 15, which established standards of pollution governing, among other entities, the city of Bemidji. Extensive negotiations between the PCA and the city followed, designed to require the city to conform.

In June 1970, PCA notified some 150 towns, villages, cities, counties, individuals, and corporations of its intention to conduct a hearing on July 13, 1970. The notice which was published and served on those affected, including the city of Bemidji, included the following:

"YOU WILL PLEASE TAKE NOTICE that pursuant to authorization by the Minnesota Pollution Control Agency, and in accordance with applicable laws (Minnesota Statutes, 1967, Chapters

115 and 116, as amended), notice is hereby given that a public hearing will be held by said Agency or by one or more authorized members, employees, or agents thereof, beginning at 1:30 p. m. on July 13, 1970, in the Board Room of the State Board of Health Building, at 717 Delaware Street S.E., Minneapolis, for the purpose of receiving and considering testimony and evidence bearing on the adoption of water use classifications; establishment of standards of quality and purity for effluents discharged to and/or which may affect certain interstate waters of Minnesota, and adopting regulations relating thereto; and revoking or modifying existing permits for sewage, industrial waste or other waste disposal systems, and issuing orders for the abatement and control of actual or potential sources of pollution of the interstate waters of the State, or tributary waters which may affect the indicated waters, in conformance with the purposes of the applicable State laws and regulations, the recommendations of the Federal-State enforcement conference on Lake Superior and major tributaries as embodied in the summary issued by Secretary Hickel on January 26, 1970, and the requirements of the approved plan for implementation of the interstate water quality standards.

"Proposed water use classifications, effluent standards, and recommendations relating to revocation or modification of permits and issuance of orders for abatement of pollution are on file in the offices of the Agency in Room 319, State Board of Health Building, 717 Delaware Street S. E., Minneapolis, Minnesota 55440, and are open for inspection by any person upon request."

The city made no appearance of any kind at the hearing. Thereafter, on January 11, 1971, the PCA adopted Regulation WPC 28, adopting certain effluent standards. That regulation supplemented WPC 15 by adding, inter alia, the following standards:

| "Substance or Characteristic | Limiting Concentration |
|---|---|
| * * * * * | |
| "Fecal coliform group organisms | 200 MPN/100 milliliters |
| * * * * * | |
| "Pathogenic organisms | None" |

On June 14, 1971, the PCA issued an order revoking the city of Bemidji's permit to discharge effluent into the Mississippi River and directing the city to conform to Reg. WPC 28 as well as WPC 15 and 25. The city was given until May 26, 1973, to complete a sewage system which would permit the city to meet the standards fixed by PCA. That order is not before us on direct appeal but is collaterally attacked by the city as a defense in the action brought by plaintiff to require the city to conform to the standards established by Reg. WPC 28.

The notice of the July 13, 1970, hearing, was entitled:

"Notice of Public Hearing on Adoption of Water Use Classifications, Establishment of Standards for Effluents Discharged to and/or Affecting the Interstate Waters of Minnesota, Revocation and Modification of Permits Relating Thereto, and Issuance of Orders for Abatement of Pollution Thereof."

In dismissing plaintiff's injunction suit brought pursuant to Minn. St. c. 116B, the trial court held that the notice was adequate to sustain the validity of Reg. WPC 28 but was inadequate to confer jurisdiction over defendant for purposes of revoking the permit issued July 9, 1959.

Under § 116B.03, subd. 1, of the Minnesota Environmental Rights Act:

"* * * [N]o action shall be allowable under this section for conduct taken by a person pursuant to any * * * permit issued by the pollution control agency * * *."

The issue, as we have indicated, is whether the city's permit of

July 9, 1959, was validly revoked. Whether the city had adequate notice of the action to be taken by the PCA at its July 13, 1970, meeting is governed by the Administrative Procedure Act. Under Minn. St. 15.0411, subd. 4, a contested case is defined as follows:

" 'Contested Case' means a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing."

Section 15.0418 makes the following provision for notice in a contested case:

"In any contested case all parties shall be afforded an opportunity for hearing after reasonable notice. The notice shall state the time, place and issues involved, but if, by reason of the nature of the proceeding, the issues cannot be fully stated in advance of the hearing, or if subsequent amendment of the issues is necessary, they shall be fully stated as soon as practicable, and opportunity shall be afforded all parties to present evidence and argument with respect thereto. * * *"

The Water Pollution Control Act contained the following notice provision (Minn. St. 1971, § 115.05, subd. 1):

"No final order of the agency shall be effective as to the vested rights of any person adversely affected thereby nor as to any disposal system operated by any person unless the agency or its authorized officer, member, or agent shall have held a hearing upon the matter therein involved at which evidence may be taken, of which hearing such person shall have had notice as hereinafter provided. Any person who will be directly affected by the final order therein shall have the right to be heard at the hearing and to submit evidence thereat. Written notice specifying the time and place of the hearing shall be served by the agency upon all persons known by it to be directly affected by the final order, personally or by mail not less than 30 days before the date of the hearing. A copy of the final order shall be served

in the same manner upon all persons who entered an appearance at the hearing." [1]

Plaintiff argues that the notice of the July 13, 1970, hearing, which was published in a Bemidji paper and served on the city, complied with the statute and with the constitutional standards prescribed by Morgan v. United States, 298 U. S. 468, 56 S. Ct. 906, 80 L. ed. 1288 (1936), and Morgan v. United States, 304 U. S. 1, 58 S. Ct. 773, 82 L. ed. 1129 (1938). The second Morgan case was quoted with approval in State v. Duluth, Mi. & I. R. Ry. Co. 246 Minn. 383, 400, 75 N. W. 2d 398, 410, appeal dismissed, 352 U. S. 804, 77 S. Ct. 46, 1 L. ed. 2d 38 (1956), as follows:

"* * * The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

It is the position of plaintiff that the city waived its right to be heard by failing to appear. He cites Martin v. Wolfson, 218 Minn. 557, 568, 16 N. W. 2d 884, 890 (1944), where we said:

"* * * The right to present evidence, to have witnesses sworn, and to have them subjected to direct and cross-examination in accordance with recognized judicial procedure was the right of any interested person present at the hearing. But, unless

---

[1] We are cognizant of the provisions of Minn. St. 15.0413, subd. 1, which direct that every rule or regulation filed in the office of the secretary of state and commissioner of administration shall have the force and effect of law. However, we hold that the specific provisions of Minn. St. 115.05, subd. 1, are here controlling under Minn. St. 645.26, which governs the interpretation of statutes which are in conflict.

that right was asserted, it must be considered waived. While courts have a tender regard for the rights and privileges of citizens, there is no reason of public policy why they should invoke for him constitutional or statutory rights which he himself has voluntarily relinquished."

The facts that the city was served with notice of the agency's intention to consider and adopt WPC 28 and that the agency invoked that regulation to revoke the city's permit resulted in no substantial prejudice to the city, it is argued, because WPC 28 merely supplemented the existing regulation, WPC 15, in an inconsequential manner. The total coliform group organism count was not changed. WPC 28 simply specified a standard by which to measure and limit fecal coliform group organism count. With respect to the addition of a standard limiting the pathogen content of water, the question was moot as to the city, according to plaintiff, since no effort was made by the PCA to measure the pathogen content in the city's sewage effluent.

While the notice may have been inadequate as to ordinary uninformed individuals, plaintiff contends that the extended negotiations between the various state agencies and the city with respect to the pollution problem should have put the city on notice of the purposes and consequences of the July 13, 1970, meeting. Plaintiff argues that the part of the notice of the meeting which showed as a purpose "revoking or modifying existing permits" and the paragraph of the notice stating that recommendations relating to revocation of permits were on file in the agency's Minneapolis office and were open for inspection gave the city ample notice and opportunity to determine what action the PCA contemplated.

Finally, plaintiff urges us to adopt a rule which would obviate the necessity for giving two notices relative to one course of action, namely, a notice pertaining to the adoption of regulations and a second notice subsequent to their adoption, indicating an intent to apply and enforce the new regulation with respect to particular individuals. We decline to adopt such a rule. We agree

with the trial court that the notice of the July 13, 1970, hearing failed to comply with Minn. St. 15.0418. The PCA, therefore, did not have jurisdiction to revoke the city's permit granted July 9, 1959.

The notice served on the city was directed at approximately 150 municipalities and individuals who were concerned with the adoption of pollution standards. In the absence of any expression of intent to revoke a specific permit, the sheer number of municipal corporations, counties, and persons notified had a tendency to distract the city from immediate concern over a change in its individual status. Obviously, the PCA could not, at one hearing, deal with the problems of all 150 who were served with notice. While the notice invited those who were served to examine the files of the agency's office to determine what recommendations it had made with respect to the revocation of permits, the record does not show whether there was on file a recommendation that the city of Bemidji's permit be revoked.

There is merit in the city's argument that it could not adequately prepare for a hearing which was designed to enforce a standard not yet adopted. We are of the opinion that Minn. St. 15.0418 was designed to meet that problem. Where "the issues cannot be fully stated in advance of the hearing * * * they shall be fully stated as soon as practicable, and opportunity shall be afforded all parties to present evidence and argument with respect thereto." Although WPC 28 was adopted January 11, 1971, the order revoking the city's permit was not issued until June 14, 1971. Since this lapse of time suggests there was no urgency in the matter, the agency had ample opportunity in the 5 months following its adoption of the standards to notify the city of its intention to enforce them against the city and to accord the city an individual hearing to resist that proposed order. We hold that the failure to afford a second hearing was a violation of the statute which deprived the agency of jurisdiction over the city and accordingly affirm.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.